(85 P.3d 1252)
No. 89,763

In the Matter of the Care and Treatment of EDWARD JOHNSON.

Opinion filed March 12, 2004.

*Russell L. Mills*, of Derby, for appellant.

*Nola F. Wright*, assistant attorney general, and *Phill Kline*, attorney general, for appellee.

Before GREENE, P.J., ELLIOTT, J., and KNUDSON, S.J.

KNUDSON, J.: Edward C. Johnson has been committed to the Larned State Security Hospital as a sexually violent predator under the Sexually Violent Predator Act (Act), K.S.A. 59-29a01 *et seq.* In this appeal from the commitment order, Johnson challenges the district court's findings and conclusions that (1) res judicata or collateral estoppel does not apply; (2) there was no violation of the 60-day trial requirement imposed under K.S.A. 2000 Supp. 59-29a06; (3) a conviction of a sexually violent offense based upon a no contest plea may be used by the State to establish the defendant is a sexually violent predator under K.S.A. 2000 Supp. 59-29a02(a); and (4) the defendant's convictions were properly admitted as evidence at trial. After initial briefing, at this court's request, the parties filed supplemental briefs addressing whether the 2003 amendments to K.S.A. 59-29a06 could be applied retroactively.

We affirm after concluding the district court did not err in its findings and conclusions. Consequently, the issue of retroactive application of 2003 amendments to K.S.A. 59-29a06 is moot.

*Factual And Procedural Overview*

In March 2000, Johnson was the subject of a clinical services report requested by the Department of Corrections (DOC). At the time, Johnson was incarcerated after pleading no contest to sexual exploitation of a child and possession of child pornography. The purpose of the report was to plan for Johnson's release from the DOC and to recommend whether Johnson should be identified as a potential risk under the Act. The report concluded Johnson scored very high on a psychological test assessing risk of future violence. The report's preparers recommended Johnson be required to complete an approved sex offender treatment program in a structured, secure environment.

Shortly thereafter, the State initiated a commitment proceeding against Johnson under the Act in Sedgwick County; this case was docketed as Case No. 00 P 650. In December 2000, the district court dismissed the action for lack of subject matter jurisdiction based on the decision of *In re Care & Treatment of Goracke*, 27 Kan. App. 2d 837, 9 P.3d 595 (2000). The district court found a probable cause hearing was held in the case on June 15, 2000, but no continuances had been granted and no trial had been held within the 60-day period required in K.S.A. 2000 Supp. 59-29a06. This was the sole basis for the dismissal. The State apparently did not appeal from this dismissal. Johnson was thereafter released from custody.

On December 28, 2000, the DOC filed a report that Johnson violated his postrelease supervision conditions by being discharged from a halfway house program. It noted Johnson was discharged after being fired from his employment for making inappropriate comments to a female coworker and for propositioning several male members of the halfway house's kitchen staff. Because of these violations, Johnson's postrelease supervision was revoked, and he was returned to a DOC facility. This revocation occurred less than a month after the dismissal of the sexual predator action and his resulting release from custody.

Johnson was scheduled to be re-released from the DOC on April 3, 2001. In February 2001, Johnson underwent another predis-

charge psychological assessment. The clinical services report referred to the report generated prior to Johnson's release in 2000, but it also included information from events occurring after the 2000 report. The additional information included incidents which allegedly occurred during Johnson's 2000 sexually violent predator evaluation at Larned and his alleged actions while on postrelease supervision. Again, Johnson was determined to be a high risk to reoffend in a sexual manner.

Before Johnson's re-release, the State filed a second sexually violent predator petition in Sedgwick County District Court, which was docketed as Case No. 01-P-266. The petition alleged Johnson was confined at the Hutchinson Correction Facility and that the DOC had certified he might be a sexually violent predator based on this 1996 conviction for sexual exploitation of a child. The State requested Johnson be determined to be a sexually violent predator.

The district court scheduled a probable cause hearing for March 15, 2001, and appointed Johnson counsel. Following that hearing, the district court concluded there was probable cause to conclude Johnson was a sexually violent predator and ordered he be sent to Larned for an evaluation. Jury trial was scheduled for May 14, 2001. On May 11, 2001, Johnson filed a motion for an independent evaluation and a motion to dismiss. Johnson referred to the first sexually violent predator action brought against him in 2000 and asserted the State was barred from bringing the present case due to collateral estoppel, res judicata, the statute of limitations, and lack of jurisdiction. Johnson also argued that his no contest plea to the charges for which he was incarcerated could not be used as a basis for a sexually violent predator action. Both motions were considered by the district court on May 14, 2001. The court denied Johnson's motion to dismiss but granted his motion for an independent evaluation. Over Johnson's objection the court then continued the trial for good cause shown until June 18, 2001.

At jury trial, Robert Huerter, a licensed clinical psychotherapist from Larned, testified. Huerter testified that Johnson was a psychopath—he had no social or moral compass and could engage in illegal activity without any sense of remorse. According to Huerter, Johnson scored high on the Rapid Risk Assessment for Sex Offense

Recidivism. Huerter diagnosed Johnson with hebephilia, pedophilia, a bipolar II disorder, and antisocial personality disorder with narcissistic traits. Huerter testified that Johnson was likely to commit further acts of sexual violence or predatory acts.

The State also presented the testimony of Dr. J.L. Fernando, a staff psychiatrist at Larned. Fernando's testimony was similar to Huerter's and confirmed the diagnoses listed by Huerter. Fernando also agreed that Johnson met the criteria of a sexually violent predator.

Johnson called Robert Barnett, a clinical psychologist, as a witness. Barnett saw Johnson on several occasions dating back to the time his underlying criminal case was pending. He gave Johnson several psychological tests, although none of these tests measured factors which would indicate whether Johnson was a sexual predator. Barnett confirmed that Johnson suffered from a bipolar disorder of a hypomanic nature, which meant he was manic most of the time but never reached a peak where he was absolutely out of control. Such a disorder can be readily treated by medication. With medication and counseling, Johnson's prognosis would be fair to good. Barnett opined that Johnson was not a pedophile and did not think he qualified under the statute as a sexually violent predator.

Johnson also testified on his own behalf. He testified about his earlier Minnesota conviction involving allegations involving a 15-year-old girl Johnson worked with at a carnival. As a result of these allegations, Johnson pled guilty to a gross misdemeanor charge and a felony charge was dropped.

Johnson also testified about his 1996 Sedgwick County conviction. He indicated he was feeling well so he stopped taking his bipolar medication. He began surfing the internet for pornography and downloaded several files of what he thought involved adult pornography. When he opened some of the files, however, he found pictures including young children. Someone saw one of these pictures on his computer and reported him. His house was searched, and his computer was seized. About one-fourth of the 40 photos found on Johnson's computer had children estimated to

be under the age of 16. Johnson asserted he was only looking for adult pornography.

Johnson testified he did not want to return to any prison-type setting and listed a number of things he thought would help him stay out of trouble. On cross-examination, Johnson admitted having a disciplinary report while in prison for possessing pornography. This charge was based, in part, on pictures Johnson had of young children in various stages of dress. He also admitted self-reporting a relationship he had with a 14-year-old male when Johnson was in his mid to late 20's. He essentially denied or downplayed the alleged incidents that lead to the revocation of his parole.

After hearing this evidence, the jury returned a verdict finding Johnson was a sexually violent predator. Consequently, the court ordered Johnson be committed to the custody of the Secretary of Social and Rehabilitation Services (SRS) for control, care, and treatment.

Johnson filed a timely motion for judgment of acquittal and motion for new trial. The district court treated the motion for judgment of acquittal as a motion for judgment notwithstanding the verdict; it then denied both posttrial motions.

*Applicability of Res Judicata or Collateral Estoppel*

Johnson argues the district court erred in not dismissing the second sexually violent predator action brought against him under the doctrines of res judicata or collateral estoppel. Whether the doctrine of res judicata or collateral estoppel applies is a question of law over which an appellate court has plenary review. *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 485, 988 P.2d 755 (1999).

"An issue is res judicata when four conditions concur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and [4] identity in the quality of persons for or against whom claim is made. [Citation omitted.] The requirements of collateral estoppel are: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. [Citation omitted.]" *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 (1999).

K.S.A. 2003 Supp. 60-241(b)(1) pertains to the effect of an involuntary dismissal by the court and states:

"For failure of the plaintiff to prosecute or to comply with these sections or any order of court, *a defendant may move for dismissal* of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this paragraph and any dismissal not provided for in this section, *other than a dismissal for lack of jurisdiction*, for improper venue, or for failure to join a party under K.S.A. 60-219 and amendments thereto, operates as an adjudication upon the merits." (Emphasis added.)

Based on the plain language of the statute, granting a defendant's motion to dismiss for lack of jurisdiction does not constitute a judgment on the merits. Moreover, courts have repeatedly recognized that a dismissal for lack of subject matter jurisdiction generally is not a dismissal on the merits for claim preclusion purposes. *Mitchell v. Chapman*, 343 F.3d 811, 820 (6th Cir. 2003).

While granting a motion to dismiss for lack of subject matter jurisdiction is not a decision on the merits, however, it does have a res judicata effect on the question of jurisdiction. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 518 (10th Cir. 1994) (citing *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 75 L. Ed. 1244, 51 S. Ct. 517 [1931]); see *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023-24, 58 P.3d 1284 (2002) (a prior determination on the question of jurisdiction is conclusive as to that issue, whether it is jurisdiction of the subject matter or of the parties; if a court is competent to decide whether the facts confer jurisdiction and it decides that jurisdiction exists, its unreversed and unvacated judgment is binding and cannot be collaterally attacked).

Thus, we must consider whether the district court's jurisdiction is based upon factual considerations that have arisen after the first commitment proceeding was dismissed. Under the Act, any agency, including SRS or the DOC, with custody of a person "serving a sentence or term of confinement" who may qualify as a sexually violent predator must give notice of that person's impending release to local prosecutors. K.S.A. 2000 Supp. 59-29a03; K.S.A. 2000 Supp. 59-29a02(f). The prosecutor then has the option of filing a petition seeking that person's commitment under the Act.

K.S.A. 2000 Supp. 59-29a04. To qualify for a sexually violent predator action, the person must have "been *convicted of or charged with* a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." (Emphasis added.) K.S.A. 2000 Supp. 59-29a02(a). Sexual exploitation of a child is explicitly included in the statutory definition of a "[s]exually violent offense." K.S.A. 2000 Supp. 59-29a02(e).

The authority to initiate a sexually violent predator commitment proceeding is based on the imminent release of any person "serving a sentence or term of confinement." K.S.A. 2000 Supp. 59-29a03; K.S.A. 2000 Supp. 59-29a02(f). At the time of the initiation of the second sexually violent predator action, Johnson was in custody of the DOC due to violations of his postrelease supervision conditions tied to his 1996 sexual exploitation conviction.

Under the sentencing guidelines, any person convicted of a felony after July 1, 1993, must be sentenced to a determinate sentence based on the guidelines. K.S.A. 2003 Supp. 21-4704(d). In presumptive prison cases, the complete sentence includes the prison sentence, the maximum good time credit allowance and a period of postrelease supervision. K.S.A. 2003 Supp. 21-4704(e)(2). Postrelease supervision is mandatory and is a component of the underlying prison sentence. *State v. Walker*, 275 Kan. 46, 47, 60 P.3d 937 (2003).

By violating the terms of his postrelease supervision and being returned to prison, Johnson was again in the custody of the DOC "serving a sentence or term of confinement." See K.S.A. 2000 Supp. 59-29a03; K.S.A. 2000 Supp. 59-29a02(f). Under the plain language of the Act, the State had the discretion to pursue a commitment action under the Act. The district court did not err in concluding this commitment proceeding was not barred under the doctrines of res judicata or collateral estoppel.

*Was Johnson's Trial Commenced in a Timely Manner*

Johnson contends the district court erred in ordering a continuance of trial from May 14, 2001, until June 18, 2001, without

complying with the requirements of K.S.A. 2000 Supp. 59-29a06. He argues:

"The order continuing the trial date made no findings of fact to establish a showing of good cause as required by [59-29a06] for the continuance of the trial date, the court did not state in its order that the continuance was on the court's own motion in the due administration of justice, or any finding that [Johnson] would not be substantially prejudiced, all as required by [59-29a06]."

K.S.A. 2000 Supp. 59-29a06 states, in material part:

"Within 60 days after the completion of [a probable cause hearing], the court shall conduct a trial to determine whether the person is a sexually violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced."

In *In re Care & Treatment of Brown*, 26 Kan. App. 2d 117, Syl. ¶ 3, 978 P.2d 300 (1999), we held that the 60-day requirement specified in K.S.A. 1995 Supp. 59-29a06 is mandatory and jurisdictional. In the opinion, the court explained:

"The language of K.S.A. 1995 Supp. 59-29a06 is clear. The use of the term 'shall' indicates the legislature mandated that the commitment trial be held within 60 days after the probable cause hearing. The inclusion of the language '[t]he trial may be continued' does not render the term 'shall' discretionary. Additionally, continuance is conditional. A continuance (1) must be considered upon a motion; (2) must be granted for the purpose of due administration; and (3) cannot substantially prejudice the defendant. Neither the court nor the parties in this case filed a motion for continuance of trial. We hold that the 60-day requirement specified in K.S.A. 1995 Supp. 59-29a06 is mandatory and jurisdictional." 26 Kan. App. 2d at 120.

In our opinion, Johnson's argument is formalistic and disregards the facts of the case. Having granted Johnson's untimely request for an independent medical evaluation, the district court had no alternative but to order a continuance of trial to facilitate that request. We can think of few circumstances that would better support a continuance in the due administration of justice and not substantially prejudice the defendant. We hold Johnson's jurisdiction claim to be without legal merit.

*Conviction Based Upon No Contest Plea*

Johnson argues he cannot be shown to be a sexually violent predator because his 1996 Sedgwick County conviction for sexual exploitation of a child was based on a no contest plea. This argument is without legal merit. K.S.A. 2000 Supp. 59-29a02(a) explicitly provides that a sexually violent predator is any person convicted of or charged with a sexually violent offense, and sexual exploitation of a child is a predicate crime under K.S.A. 2000 Supp. 59-29a02(e). Thus, the fact Johnson's conviction was based upon a no contest plea would not affect admissibility of the conviction. *Cf. State v. Shaffer*, 14 Kan. App. 2d 282, 284-85, 788 P.2d 1341, *rev. denied* 246 Kan. 770 (1990) (conviction based on no contest plea is prior conviction under habitual violator statutes).

*Evidentiary Rulings*

The admission of evidence lies within the sound discretion of the court. *Moore v. Associated Material & Supply Co.*, 263 Kan. 226, 244, 948 P.2d 652 (1997). An abuse of discretion must be shown by the party attacking the evidentiary ruling and exists only when no reasonable person would take the view adopted by the district court. *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 633-34, 1 P.3d 891 (2000).

Johnson seemingly attempts to supplement his previous argument by raising as an evidentiary issue whether the State should have been allowed to introduce testimony regarding his prior conviction for sexual exploitation of a child. This argument is only raised incidentally, and we are not provided with citations to the record or supportive legal authorities. Consequently, we need not consider this additional argument. See *Dalmasso v. Dalmasso*, 269 Kan. 752, 765, 9 P.3d 551 (2000); *Campbell v. City of Leavenworth*, 28 Kan. App. 2d 120, 126, 13 P.3d 917 (2000), *rev. denied* 270 Kan. 897 (2001).

Moreover, Johnson failed to object to evidence of his conviction during the trial. When Robert Huerter testified that he discussed with Johnson his conviction and the subsequent revocation of postrelease revocation, there was no objection to the admissibility of the evidence. The only time Johnson objected was after the fact,

when the State at the conclusion of its case asked the district court to take judicial notice of the journal entry and criminal complaint in the underlying criminal case. A party cannot raise an issue on appeal where no contemporary objection was made and where the district court did not have an opportunity to rule. *State v. Whitesell,* 270 Kan. 259, 283-84, 13 P.3d 887 (2000).

Johnson also contends the district court erred in admitting evidence regarding a prior Minnesota conviction without foundation testimony establishing the conviction is a sexually violent offense under K.S.A. 2000 Supp. 59-29a02. Johnson did object initially to attempts to bring in the Minnesota conviction. However, when the State cross-examined a defense witness about this conviction, no objection was lodged. Thus, it is not clear this issue has been properly preserved for appeal. However, Johnson has misconstrued the State's use of the Minnesota conviction. The State did not claim the Minnesota conviction was a "sexually violent offense" which was a predicate for a sexually violent predator conviction. Instead, the State presented the evidence, claiming it was relevant to the jury in determining whether Johnson posed a risk of future dangerousness. In order for evidence to be relevant, it must have some tendency in reason to prove a material fact; to establish relevancy, there must be some material or logical connection between the asserted facts and the inference or result that is sought. *State v. Meinert,* 31 Kan. App. 2d 492, 496, 67 P.3d 850, *rev. denied* 276 Kan. 972 (2003). We conclude the evidence was relevant and admissible for the purpose offered, and the district court did not err.

*Application of 2003 Legislative Amendments*

We will not address this issue rendered moot as a result of our holdings on the issues raised by the parties. See *In re T.D.,* 27 Kan. App. 2d 331, 333, 3 P.3d 590, *rev. denied* 269 Kan. 933 (2000).

Affirmed.