NOT DESIGNATED FOR PUBLICATION

Nos. 124,050
124,051
124,052

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of S.G., N.G., and M.G.,
Minor Children.

MEMORANDUM OPINION

Appeal from Grant District Court; LINDA P. GILMORE, district judge. Opinion filed May 27, 2022. Affirmed.

*Derek W. Miller*, of Miller & French, LLC, of Liberal, for appellant.

*Kelly Premer Chavez*, county attorney, for appellee.

Before HILL, P.J., MALONE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: M.L.G. (Mother), the biological mother of S.R.G., S.G., N.G., and M.G. (collectively Children), appeals the district court's decision terminating her parental rights. Mother does not challenge the district court's findings that she is an unfit parent and that termination of her parental rights is in the best interests of the Children. Instead, Mother argues only that the State did not give proper notice of the proceedings under the Indian Child Welfare Act (ICWA). After several hearings, the district court found that the State used due diligence to identify and provide notice to all the tribes of which there was reason to know the Children may have been a member or were eligible for membership. Finding no error in the district court's decision that the State satisfied ICWA notice provisions, we affirm the district court's judgment terminating Mother's parental rights.

1

FACTUAL AND PROCEDURAL BACKGROUND

Given the legal question at issue, and the procedural posture of this case, the facts of the child in need of care (CINC) cases are largely irrelevant and summarized only for context. On February 18, 2015, the Kansas Department for Children and Families (DCF) received a report of physical neglect of the Children. On March 27, 2015, the State filed CINC petitions. The district court placed the Children in protective custody with DCF and awarded Grandmother temporary custody.

On March 31, 2015, Mother signed an affidavit on Indian heritage, attesting that she was an enrolled member of a federally recognized Indian tribe or Alaska native village and that the Children may be associated with the Apache tribe. On April 16, 2015, the State sent notice to the Secretary of the Interior/Bureau of Indian Affairs (BIA) Area Director and the Chairperson of the Apache Tribe of Oklahoma. In response to the notice, the State received a letter from the Apache Tribe of Oklahoma, stating that the Children and family members were not in the enrollment records for the Apache Tribe of Oklahoma. The letter stated no further notice to them was necessary.

The district court adjudicated the Children as CINCs on July 30, 2015. Two days later, the local hospital pronounced S.R.G. dead. Based on the circumstances surrounding S.R.G.'s death, Mother was arrested on murder and child abuse charges. On April 20, 2018, Mother pled no contest to voluntary manslaughter and child abuse. She was sentenced to 92 months' imprisonment.

Mother's parental rights were terminated on January 31, 2019, by a non-lawyer magistrate judge. Mother timely appealed to the district court. The district court found Mother presumptively unfit because she was convicted of voluntary manslaughter of one of her children and for other statutory reasons. But based on an objection by Mother, the district court expressed some concern whether the State complied with required ICWA

notice provisions. More specifically, the district court questioned whether notice to the Apache Tribe of Oklahoma sufficiently covered Mother's possible membership in a Texas Apache tribe. The district court conditioned the termination of parental rights order upon the State's proper compliance with ICWA and remanded the case to the magistrate judge "for an on the record determination of whether the State provided correct [ICWA] notice with the required known content to the correct office."

The magistrate judge held an evidentiary hearing on November 4, 2019. Mother was not present but appeared through counsel. At the hearing, the State introduced: Mother's signed affidavits attesting to an Apache affiliation; a letter from the Apache Tribe of Oklahoma Indian Child Welfare Program denying such affiliation; a printout of the federal register of recognized Indian entities from the United States BIA purporting to show that the only federally recognized Apache tribe is in Oklahoma; a printout of tribes listed in the Southern Plains region showing that the only federally recognized Apache tribe is in Oklahoma in the Southern Plains region; and the ICWA notice filed on April 16, 2015. The magistrate judge found that "the State met all the required content to the correct office" because notice went to the Southern Plains Anadarko Agency which covers Oklahoma, Texas, and Kansas. The magistrate judge found that "the ICWA requirements have been met in these matters for [S.G., N.G.] and [M.G.].

Mother again appealed the magistrate judge's decision to the district court. This time the district court found that the affidavits about Indian heritage did not meet the trustworthiness requirement of the business record exception to hearsay, noting the record reflected Mother was confused, and the court could not be convinced she knew what she was signing. Based on Mother's testimony at prior hearings about family members' possible Indian heritage, the district court reasoned that "this testimony should have provided far more information to the state for purposes of completing a proper ICWA notice than the affidavit's blank section under 'other pertinent information.'" The district

3

court "again remanded to the magistrate judge to determine, after the State conducts due diligence and sends proper notice, if [the] [C]hildren are Indian children."

On June 19, 2020, upon remand, the State revised its previous notice. The revised notice was sent by certified mail to more than 20 entities: Anadarko Regional Director, Board of Indian Affairs (BIA) in Anadarko, Oklahoma, who is to receive notice for child custody proceedings in Kansas; Apache Tribe of Oklahoma, Apache, Oklahoma; Apache Tribe of Oklahoma, Anadarko, Oklahoma; Fort Sill Apache Tribe in Apache, Oklahoma, and also in Deming, New Mexico; Pawnee Agency in Pawnee, Oklahoma; Shawnee Office, BIA in Shawnee, Oklahoma; Horton Agency, BIA in Horton, Kansas; Concho Agency, BIA in El Reno, Oklahoma; Eastern Oklahoma Regional Office, BIA in Muskogee, Oklahoma; Southwest Region Regional Office, BIA, Albuquerque, New Mexico; Jicarilla Agency, Dulce, New Mexico; Mescalero Agency, BIA, in Mescalero, New Mexico; Western Region Regional Office, BIA in Phoenix, Arizona; San Carlos Agency, San Carlos, Arizona; San Carlos Apache Tribe, San Carlos, Arizona; Truxon Canon Agency, Valentine, Arizona; Yavapai-Apache Nation of Camp Verde, Arizona; Tonto Apache Tribe in Payson, Arizona; Fort Apache Agency, in Whiteriver, Arizona; White Mount Apache Tribe, Whiteriver, Arizona.

The State filed proof of mailing and the responses it received. All responses said the Children were not enrolled or eligible to be enrolled and that the notified tribes would not involve themselves in the court proceedings.

The magistrate judge held another evidentiary hearing on June 29, 2020, and Mother, who was incarcerated, appeared by Zoom. The State presented evidence on its compliance with the ICWA notice requirements and the responses it received. Mother testified at the hearing and, for the first time in the proceedings, expressed a belief that her maternal great grandparents were Sioux Native American in either North or South Dakota. But Grandmother testified that Mother was wrong about the family connection

4

with the Sioux tribe. Grandmother testified that the family may have a connection with the Yaqui tribe, but she did not know whether the Yaqui tribe was a federally recognized tribe or where it was located. Following the testimony, the magistrate judge found that the State acted with due diligence to identify and notify all tribes of which there was reason to know the Children may be members or eligible for membership.

For a third time, Mother appealed the district magistrate's decision. In an order filed on February 10, 2021, the district court affirmed the magistrate's decision, finding the revised notice included the names, birthdates, and birth places of all the Children; the Children's parents' names and birthdates; the maternal grandmother's name and birthdate; the maternal grandfather's name and location of death—Beeville, Texas; the paternal grandmother's name and birthdate; Mother's paternal grandmother's married and maiden name, former address, place, and date of birth and place of death in Beeville, Texas; Mother's maternal grandmother's name, date, and place of birth; and Mother's maternal grandfather's name. The district court found that "[t]he testimony given in this matter by [Mother] and [Grandmother] in this case was often confusing, vague with little specifics and conflicting." The district court found that the Yaqui tribe mentioned by Grandmother at the hearing is not on the list of recognized federal tribes. The district court also found:

> "[B]ased on the information at the hearing on remand, this court will confirm the magistrate decision and find the State used due diligence to identify and provide notice to all the [t]ribes of which there is reason to know the child may be a member or is eligible for membership. All possible tribes known to the state were notified by certified mail with return receipt filed with the court. In addition, a proper notice was sent to the Anadarko Regional Director, Bureau of lndian Affairs, P.O. Box 368, Anadarko Oklahoma, 73005. The court affirms the magistrate finding that these are not Indian children, the termination of the parents' rights will not be set aside, the [ICWA] does not apply and reaffirms the prior decision terminating parental rights."

Mother timely appealed the district court's judgment on March 3, 2021, but the notice of appeal was not verified. Mother filed a verification of the notice of appeal on May 26, 2021. In response to this court's show cause order questioning jurisdiction to hear this appeal, Mother provided the original notice of appeal and the subsequent verification. This court noted Mother's response and retained the appeal.

## DOES THIS COURT HAVE JURISDICTION OVER THIS APPEAL?

Before addressing Mother's claim on appeal, the State argues in its brief that this court lacks jurisdiction over the appeal for two reasons. First, the State argues that the district court's order Mother is appealing is not an appealable order. Second, the State argues that the notice of appeal is untimely because of Mother's late verification. Mother did not respond to the State's jurisdiction arguments.

Whether jurisdiction exists is a question of law over which this court's review is unlimited. *Via Christi Hospitals Wichita v. Kan-Pak*, 310 Kan. 883, 889, 451 P.3d 459 (2019). The right to appeal is statutory. Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). Because the law requires that an appellate court have jurisdiction, it is the appellate court's duty to dismiss an appeal when the record discloses a lack of jurisdiction. *City of Kansas City v. Lopp*, 269 Kan. 159, 161, 4 P.3d 592 (2000).

K.S.A. 2020 Supp. 38-2273(a) limits the types of orders that can be appealed in a CINC case under the revised Kansas Code for Care of Children. Under that statute, appealable orders are limited to "'any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights.' If an order in a child in need of care case does not fit within these five categories, it is not appealable." *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 3, 329 P.3d 458 (2014).

6

The State does not elaborate on its position but simply says that "this appeal was taken from an order that does not fit within the five categories." But the State's assertion is wrong. Mother is appealing the district court's February 10, 2021, order finding that proper notice was given under ICWA and reaffirming the prior decision terminating Mother's parental rights. Because Mother is appealing the final order terminating her parental rights, it is an appealable order, and this court has jurisdiction to review it. *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 3.

Next, the State argues that this court lacks jurisdiction because Mother's notice of appeal was untimely verified. Mother's original notice of appeal was filed within 30 days of the final order, but it was not verified until almost 3 months later. The State argues that this untimely verification means that this court lacks jurisdiction.

The notice of appeal from the district court must be filed within 30 days. K.S.A. 2020 Supp. 38-2273(c); K.S.A. 2020 Supp. 60-2103(a). The appellant must verify every notice of appeal, docketing statement, and appellate brief if the appellant was personally served at any time during the proceedings. K.S.A. 2020 Supp. 38-2273(e). "Failure to have the required verification shall result in the dismissal of the appeal." K.S.A. 2020 Supp. 38-2273(e). This requirement was designed to alleviate the problem of attorneys who were bound to proceed with appeals for a parent even if the parent was uninterested or could not be located. See *In re J.A.*, 30 Kan. App. 2d 416, 422, 42 P.3d 215 (2002).

Mother's notice of appeal was timely filed on March 3, 2021; a separate verification of the notice was filed on May 26, 2021; the docketing statement was timely filed on June 14, 2021. This court has found that an unverified notice of appeal may be amended by subsequent verification, even if the amendment is untimely. *In re K.N.H.*, No. 95,374, 2006 WL 1585736, at *3 (Kan. App. 2006) (unpublished opinion).

This court has already addressed the jurisdiction issue and retained jurisdiction over the appeal. In response to this court's show cause order questioning jurisdiction to hear this appeal, Mother provided the original notice of appeal and the subsequent verification. This court did not ask for further briefing on the issue, but simply ruled "[a]ppeal retained." We decline to overrule this court's prior order retaining jurisdiction over this appeal, and we will address the merits of Mother's sole claim on appeal.

## DID THE DISTRICT COURT ERR WHEN TERMINATING MOTHER'S PARENTAL RIGHTS AFTER FINDING THAT PROPER NOTICE WAS GIVEN UNDER ICWA?

Mother claims the district court abused its discretion when it ruled that the State gave proper notice under ICWA. She also asserts that by ignoring the notice requirements, the district court violated her substantive due process rights, another abuse of discretion. The State responds that the district court did not err in finding that the State gave sufficient notice under ICWA and in terminating Mother's parental rights. Determining whether ICWA applies requires statutory interpretation, which makes it a question of law over which this court exercises unlimited review. *In re A.J.S.*, 288 Kan. 429, 431, 204 P.3d 543 (2009).

Termination of parental rights of Native American children is governed by the ICWA, 25 U.S.C. § 1901 (2018) et seq. See K.S.A. 2020 Supp. 38-2203(a) (The revised Kansas Code for Care of Children does not apply when ICWA applies.). See *In re M.F.*, 290 Kan. 142, 148-49, 225 P.3d 1177 (2010). In any proceeding involving custody of a child of Indian heritage, the court must determine whether ICWA governs the proceeding. If a child is an enrolled member of a tribe or is the biological child of a member and is eligible for membership, ICWA applies. 25 U.S.C. § 1903(4) (2018). Whether a child is considered Indian under the ICWA is ultimately a determination for the child's potential tribe, not the district court. *In re M.H.*, 50 Kan. App. 2d 1162, 1166, 337 P.3d 711 (2014).

If the district court knows or has reason to believe that the child whose parent's rights are sought to be terminated might be Indian, then it must order the party seeking to terminate the parent's rights to provide notice to the child's tribe of the proceedings and to inform the tribe of its right to intervene. 25 C.F.R. § 23.11(a) (2019). ICWA requires specific notice of the proceedings to the applicable Indian nations or tribes or to the BIA so that an interested nation or tribe may intervene in the proceedings. A tribal court has concurrent jurisdiction with state courts over involuntary child custody proceedings involving children not domiciled on a reservation. 25 U.S.C. § 1911(b) (2018). *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989). According to 25 C.F.R. § 23.111 (2019), the federal regulation governing ICWA notice:

> "(c) Notice must be sent by registered or certified mail with return receipt requested. Notice may also be sent via personal service or electronically, but such alternative methods do not replace the requirement for notice to be sent by registered or certified mail with return receipt requested.
>
> "(d) Notice must be in clear and understandable language and include the following:
>
> (1) The child's name, birthdate, and birthplace;
>
> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;
>
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents;
>
> (4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member);
>
> (5) A copy of the petition, complaint, or other document by which the child-custody proceeding was initiated and, if a hearing has been scheduled, information on the date, time, and location of the hearing;
>
> . . . .

9

"(e) If the identity or location of the child's parents, the child's Indian custodian, or the Tribes in which the Indian child is a member or eligible for membership cannot be ascertained, but there is reason to know the child is an Indian child, notice of the child-custody proceeding must be sent to the appropriate Bureau of Indian Affairs Regional Director (see www.bia.gov). To establish Tribal identity, as much information as is known regarding the child's direct lineal ancestors should be provided. The Bureau of Indian Affairs will not make a determination of Tribal membership but may, in some instances, be able to identify Tribes to contact."

25 C.F.R. § 23.11(b)(4) states:

"(4) For child-custody proceedings in Kansas, Texas (except for notices to the Ysleta del Sur Pueblo of El Paso County, Texas), or the western Oklahoma counties of Alfalfa, Beaver, Beckman, Blaine, Caddo, Canadian, Cimarron, Cleveland, Comanche, Cotton, Custer, Dewey, Ellis, Garfield, Grant, Greer, Harmon, Harper, Jackson, Kay, Kingfisher, Kiowa, Lincoln, Logan, Major, Noble, Oklahoma, Pawnee, Payne, Pottawatomie, Roger Mills, Texas, Tillman, Washita, Woods or Woodward, notices must be sent to the following address: Anadarko Regional Director, Bureau of Indian Affairs, P.O. Box 368, Anadarko, Oklahoma 73005. Notices to the Ysleta del Sur Pueblo must be sent to the Albuquerque Regional Director at the address listed in paragraph (b)(6) of this section."

Mother's appellate brief copies verbatim five pages from the district court's February 10, 2021, decision, setting forth the district court's findings on the ICWA notice issues. Mother's brief then makes the conclusory claim: "The District Court made a clear and obvious error in law when ruling that proper notice was given. This clear and obvious error constitutes an[] abuse of discretion and thus the District court's ruling should be overturned." Mother adds: "It is undisputed and supported by evidence in the record that the children at issue in this appeal are of Native American heritage. . . . Therefore, notice to potential affiliated tribes is mandatory under ICWA before parental rights can be terminated or transferred. Proper notice was not given pursuant to ICWA."

Contrary to Mother's assertions, the district court correctly found that the State complied with the ICWA notice requirements and no error of law was made. Originally relying on Mother's March 31, 2015, affidavit, the State first sent notice to the Secretary of the Interior/BIA Area Director and the Chairperson of the Apache Tribe of Oklahoma on April 16, 2015. The notice contained the Children's names, birthdates, current address, possible tribe affiliation of Apache; similar information for Mother; and no known information at that time for Children's father or other kin. The Apache Tribe of Oklahoma Enrollment Office confirmed that the Children were not in the enrollment records and no further notice was required.

On June 19, 2020, after the district court's second remand to the magistrate judge, the State sent a revised notice to more than 20 entities, including Apache tribes in Oklahoma, New Mexico, and Arizona, plus various BIA offices in Oklahoma, Kansas, New Mexico, Arizona, and Washington D.C. This notice had updated information on the Children's place of birth; information on S.G. and N.G.'s father—M.G.'s father is still unknown; all known information on the Children's grandparents, including Mother's biological mother, Mother's biological father, and father's biological mother; all known information on the Children's great-grandparents, including Mother's biological grandmothers and grandfathers. Again, every response the State received said that the Children were not enrolled or eligible for enrollment.

After reviewing the evidence presented in the final hearing, the district court found that the State used due diligence to identify and provide notice to all the tribes of which there was reason to know the Children may have been a member or were eligible for membership. The record supports this finding. Mother points to no evidence in the record and cites no applicable statute or regulation to support her conclusory argument that the district court erred in finding the State satisfied ICWA notice provisions.

11

In copying the district court's findings in her appellate brief, Mother includes the findings that she testified at the final hearing and, for the first time in the proceedings, expressed a belief that her maternal great grandparents were Sioux Native Americans in either North or South Dakota. But Grandmother testified that Mother was wrong about the family connection with the Sioux tribe. Grandmother testified that the family may have a connection with the Yaqui tribe, but she did not know whether the Yaqui tribe was a federally recognized tribe or where it was located. Mother does not develop any argument on appeal related to this testimony. Mother raises this point incidentally and a point raised incidentally in a brief and not argued there is considered waived or abandoned. *In re Marriage of Williams,* 307 Kan. 960, 977, 417 P.3d 1033 (2018).

But more importantly, the district court found in its final order that "[t]he testimony given in this matter by [Mother] and [Grandmother] in this case was often confusing, vague with little specifics and conflicting." We can infer from this finding that the district court did not find the testimony from Mother and Grandmother about the Sioux or the Yaqui tribe to be credible. "'An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). The district court also found that the Yaqui tribe is not on the list of recognized federal tribes that would need to receive notice of the hearing, and this finding is supported by evidence in the record.

Finally, Mother argues the district court abused its discretion when it violated her substantive due process rights because it "ignore[d] the notice requirement of ICWA and terminat[ed her] parental rights." Mother raises this argument for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal. *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 35) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Mother does not do so.

12

In any event, Mother's argument on this issue fails. Even assuming she brought this issue before the district court, it stems from the flawed presumption that the district court ignored ICWA notice provisions. As we have explained, the district court did not ignore the requirements and correctly found the State satisfied ICWA notice provisions.

In sum, we conclude the district court did not err in finding that the State used due diligence to identify and provide notice to all the tribes of which there was reason to know the Children may have been a member or were eligible for membership. Thus, the State gave proper notice of the proceedings under ICWA. As this is Mother's only claim on appeal, we find the district court did not err in terminating Mother's parental rights.

Affirmed.